RECEIVED
AUG 2 8 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| EDWIN G. PREIS, JR. | CIVIL ACTION NO. 07-582 |
| VERSUS | JUDGE DOHERTY |
| NEW ENGLAND LIFE INSURANCE COMPANY AND METROPOLITAN LIFE INSURANCE COMPANY | MAGISTRATE JUDGE METHVIN |

### MEMORANDUM RULING

Pending before this Court is a Motion to Remand [Doc. 11-1], filed on behalf of plaintiff, Edwin G. Preis, Jr., urging this matter be remanded to the Fifteenth Judicial District Court, Lafayette Parish, Louisiana, as the matter in controversy does not exceed $75,000.[1] Not only does plaintiff assert the amount in controversy does not exceed $75,000, he further "avers and stipulates that the controversy in this matter involves an amount less than $75,000.00, excluding interest, costs and attorneys' fees. . . ." [Doc. 11-2, p. 2] Defendants, New England Life Insurance Company ("New England Life") and Metropolitan Life Insurance Company ("Metropolitan") oppose the motion. [Doc. 13]. Briefing has now been completed and the motion has been taken under advisement.

### I. Factual and Procedural Background

On February 12, 2007, plaintiff filed a Petition in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana, alleging: (1) breach of a life insurance policy contract; (2) negligent misrepresentations made by New England Life and/or Metropolitan and an agent of New England Life and/or Metropolitan; (3) unfair trade practices under LA REV. STAT. ANN. § 51:1401; and (4)

---

[1] Defendant's removal is premised upon diversity of citizenship. 28 U.S.C. § 1332. Plaintiff has not opposed defendant's assertion that complete diversity exists.

breach of duty of good faith and fair dealing. [Doc. 1-2]

Generally speaking, plaintiff's lawsuit asserts New England Life and/or Metropolitan, through their duly authorized agent, extended an offer to plaintiff for the conversion of an existing New England Life Annual Renewable Term Policy to be issued by Metropolitan. According to plaintiff:

> The terms of the offer included that Metropolitan would issue a conversion life insurance policy to Preis, with coverage in the amount of $500,000, for an annual premium of $4,919, subject to a conversion credit in the amount of $3,122 that would be applied to the first year's premium, with the policy to be dated such that the age of the policy holder would be 59 years old.

After plaintiff accepted the offer and, according to plaintiff, a contract "came into existence," defendants refused to honor the contract and advised plaintiff the policy would only be issued upon the payment of an annual premium of $6,546, thereby changing the agreed to terms. [Doc. 1-2, p. 2] The plaintiff further argues defendants advised plaintiff "they would not honor their contractual obligation to provide a conversion credit to any policy to be issued." [Doc. 1-2, p. 3] Plaintiff specifically prays there be judgment in this matter in his favor:

> **1. Recognizing the validity of the contract entered into between Preis and New England Life and/or Metropolitan and ordering defendants New England Life and/or Metropolitan to issue to Preis a policy in accordance with the terms of such contract;**
>
> 2. Awarding any and all damages sustained by Preis as a result of New England Life's and/or Metropolitan's direct breach of their contractual obligations;
>
> 3. Additionally and/or in alternatively, awarding any and all damages sustained by Preis as a result of New England Life's and/or Metropolitan's negligent misrepresentation;
>
> 4. Additionally and/or in alternatively, awarding Preis damages due to the violations of the Unfair Trade Practice and Consumer Protection Law of Louisiana and assessing any and all penalties and attorneys fees available thereunder;

> 5. Additionally and/or in alternatively, awarding Preis damages, attorneys fees and penalties due to the breach of the duty of good faith and fair dealing; and
>
> 6. Awarding Preis any and all other general and equitable relief for which he is entitled to recover under Louisiana law, including, but not limited to, court costs, penalties and attorney's fees.

[Doc. 1-2, pp. 5-6 (emphasis added)] Following service of the state court petition, defendant timely removed the matter to this court pursuant to 28. U.S.C. § 1332, asserting complete diversity of citizenship exists, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, as the policy at issue has a face value of $500,000. [Doc. 1-1]

## II. Law

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. 28 U.S.C. § 1441(a). The removing party bears the burden of showing federal jurisdiction exists, and removal was proper. *Manguno v. Prudential Property & Casualty Ins. Co.*, 276, F.3d 720, 723 (5th Cir. 2002). Whether jurisdiction is present for removal purposes is dependent upon the claims in the state court petition as they existed at the time of removal. *Id.* As the removal statute is to be strictly construed in favor of remand, any ambiguities are construed against removal. *Id.*

In this case, both parties concede complete diversity exists; they disagree as to whether the amount in controversy is sufficient for diversity jurisdiction purposes. Because Louisiana law prohibits a party from alleging or demanding a specific monetary amount of damages, the petition in this matter does not indicate the amount sought from defendant. When a petition does not include a specific monetary demand, a removing defendant must establish by a preponderance of evidence that the amount in controversy exceeds $75,000. *Manguno*, 276 F.3d at 723. Defendant satisfies his burden if "(1) it is apparent from the face of the petition that the claims are likely to exceed

$75,000, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Id.* If a state statute provides for attorneys fees, such fees are included as part of the amount in controversy. *Id.* (quoting *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999)).

### III. Analysis

In the instant matter, defendants assert the amount in controversy exceeds the $75,000 threshold amount, because the face value of the life insurance policy is $500,000. Plaintiff argues in his Motion to Remand the amount in controversy is less than $75,000. Specifically, plaintiff states his damages are worth "approximately $32,540" for the "cost differential between the original agreement to issue the policy and the offer made after defendants refused to honor the original agreement . . . ." [Doc. 11-2, p.3] Plaintiff explains, "[H]e is not seeking specific performance of a contract for life insurance, i.e., payment of the $500,000.00 policy limits. Instead, what is at issue is specific performance of the defendant's agreement to issue a policy of life insurance under the [negotiated] terms and conditions . . . ." [Doc. 11-2, p.2] The only authority plaintiff cites in support of his argument is an Eleventh Circuit case, which is not relevant to the issue at hand, *Darden v. Ford Consumer Fin. Co.*, 200 F.3d 753, 755, (11th Cir. 2000).[2]

In support of their argument that the face value of the policy (i.e., $500,000) is the amount in controversy, defendants cite *Duderwicz v. Sweetwater Savings Ass'n.*, 595 F.2d 1008, 1014 (5th Cir. 1979) (internal citations omitted) ("This Court has held that where an insurer seeks to cancel insurance policies it has written, the value of the matter in controversy is the face value of the policy. . . [T]he value of the matter in controversy is measured not by the monetary judgment which the

---

[2] The issue in *Darden* was whether or not attorney's fees under a Georgia RICO statute could be aggregated to satisfy the amount in controversy for diversity jurisdiction.

plaintiff may recover, but by the judgment's pecuniary consequence to those involved in the litigation."); and *New York Life Ins. & Swift*, 38 F.2d 175 (5th Cir. 1930) (holding face value of insurance policy is the value of the amount in controversy).

Though the cases cited by defendants are helpful, this Court finds the case of *Waller v. Professional Ins. Corp.*, 296 F.2d 545 (5th Cir. 1961) to be closer on point. There, an insured brought suit against an insurer and two Florida insurance commission officials in federal court, premised upon diversity jurisdiction, for a wide variety of relief. Plaintiff had purchased from Professional a single premium life insurance policy in the face amount of $50,000. As part of the insurance plan, plaintiff borrowed $22,950 from Prudential to finance his payment of the premium of $22,971.18. He executed a "policy loan note" to Professional to cover this debt, promising to pay interest at the rate of 4% per annum, payable annually quarterly in advance. The note was tied to the policy as security for the payment of the note and interest. However, unknown to the parties, the agreement contained a provision which conflicted with the 4% interest rate fixed in the note - the policy provided for interest of 5% per annum, whereas the note provided for 4%. Some twelve years later, the Florida treasurer's office called upon Professional to correct the interest differential in various policies and notes with this discrepancy, and collect the back interest allegedly due. Professional wrote plaintiff, demanding $3,835.63 in back interest.

In *Waller*, plaintiff asked the Court for: (1) a judgment that Professional was not entitled to any of the back interest, and that the amounts plaintiff paid under protest be refunded; (2) that Professional be restrained from making any claim against plaintiff based upon an interest rate other than 4%; (3) that the two Florida officials be restrained from interfering with plaintiff's insurance contract note; (4) that the court declare 4% as the rate due according to the intention of the parties;

(5) should the court determine 5% is the rate, that the court declare the entire contract illegal in its inception and refund plaintiff's premiums and interest; (6) in the further alternative, the court rescind the contract for failure of consideration and mistake and refund plaintiff all amounts paid; (7) again in the alternative, the court hold the defendants are estopped.

The district court dismissed the suit for lack of jurisdiction stating "involved here is simply the difference between the 4% interest actually collected upon the $22,950.00 note and the 5% interest which the defendant Professional has sought to collect at the direction of the defendants Reinhardt and Larson . . . 1% of $22,950.00 for twelve years, which . . . amounts to $3,835.63 when compounded at 5% per annum." *Id.* at 547. The Fifth Circuit reversed, holding:

> The plaintiff's complaint, the good faith of which is not contested, makes it impossible to restrict the issues to the narrow confines of the insurance company's claim for back interest payments allegedly due. The validity of this claim depends on the validity of the $50,000 insurance policy and the $23,000 note. It may well be, as the plaintiff alleges, that the court will determine that the note or the note and policy together were invalid initially because of illegality or mistake or some other reason; *Waller's* complaint effectively puts these questions in issue. Or the Court may find that the 4% rate stated in the note is binding and the contract valid. However, the Court may decide, it cannot limit its inquiry to Professional's claim to back interest; it must rule on the validity of the underlying agreements to which the interest rate applies. Since the relief sought requires an adjudication of the legal effect of the insurance policy and the policy loan, their values determine the amount in controversy.

*Id.* at p. 547 (citing *Home Ins. Co. of New York v. Trotter*, 130 F.2d 800 (8th Cir. 1942); *C.E. Carnes & Co. v. Employers' Liability Assur. Corp. Ltd. of London, England*, 101 F.2d 739 (5th Cir. 1939)).

The Court later states:

> The courts look to the value of the property involved rather than the damages that might be suffered, to determine the jurisdictional amount in suits for injunctions. Underlying these cases is the principle that when the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy. That principle applies with full force in the instant case since both the note and the policy are well en excess of the jurisdictional amount, the

> district court has jurisdiction of the case. Not to be overlooked is the plaintiff's prayer for an injunction against Professional, the effect of which - should it be granted - would be to allow a $50,000 policy to continue until maturity.

*Id.* at 547 - 548 (citations omitted).

Similarly in this matter, as already stated, plaintiff specifically prays there be judgment in this matter in his favor:

> **1. Recognizing the validity of the contract entered into between Preis and New England Life and/or Metropolitan and ordering defendants New England Life and/or Metropolitan to issue to Preis a policy in accordance with the terms of such contract;**
>
> 2. Awarding any and all damages sustained by Preis as a result of New England Life's and/or Metropolitan's direct breach of their contractual obligations;
>
> 3. Additionally and/or in alternatively, awarding any and all damages sustained by Preis as a result of New England Life's and/or Metropolitan's negligent misrepresentation;
>
> 4. Additionally and/or in alternatively, awarding Preis damages due to the violations of the Unfair Trade Practice and Consumer Protection Law of Louisiana and assessing any and all penalties and attorneys fees available thereunder;
>
> 5. Additionally and/or in alternatively, awarding Preis damages, attorneys fees and penalties due to the breach of the duty of good faith and fair dealing; and
>
> 6. Awarding Preis any and all other general and equitable relief for which he is entitled to recover under Louisiana law, including, but not limited to, court costs, penalties and attorney's fees.

[Doc. 1-2, pp. 5-6 (emphasis added)] Thus, as in *Waller*, plaintiff's complaint makes it impossible to restrict the issues before this Court to the narrow confine of the "cost differential between the original agreement to issue the policy and the offer made after defendants refused to honor the agreement," which, according to plaintiff, is approximately $32,540.00.[3] [See Doc. 11-2, p. 3] Just

---

[3]Though the Court looks only to the state court petition at the time of removal to determine whether jurisdiction exists, this Court notes it is even more problematic to restrict the issues before it to the "cost differential" (as plaintiff argues) where, as here, defendant's Answers deny every allegation

as in *Waller*, this Court may determine it cannot limit its inquiry to the "cost differential" between the two purported policies, and it must rule on the validity of the underlying agreement to issue a conversion life insurance policy with coverage in the amount of $500,000. As the policy at issue in this matter is well in excess of the jurisdictional amount, this Court has jurisdiction over this matter.

### IV. Conclusion

Due to the foregoing, the Court finds the amount in controversy exceeds $75,000, and therefore plaintiff's Motion to Remand is DENIED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 28th day of August, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

made by plaintiff in this matter concerning the negotiation, the terms and even the very formation of a contract. [See generally Doc. Nos. 1-2, 8 and 9]