RECEIVED

MAY 2 8 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| EDWIN G. PREIS, JR. | CIVIL ACTION NO. 07-582 |
| VERSUS | JUDGE DOHERTY |
| NEW ENGLAND LIFE INSURANCE COMPANY AND METROPOLITAN LIFE INSURANCE COMPANY | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Currently pending before this Court is a Motion for Summary Judgment [Doc. 32], a Motion to Strike an Affidavit attached to plaintiff's Memorandum in Opposition to the Motion for Summary Judgment [Doc. 36], and a Motion for Leave to File a Reply Brief to Plaintiff's Supplemental Opposition to the Motion for Summary Judgment [Doc. 40]. All motions were filed on behalf of defendants, New England Life Insurance Co. ("New England") and Metropolitan Life Insurance Co. ("MetLife"). All briefing is now complete, and the Court rules as follows:

### I. Motion for Summary Judgment

On February 12, 2007, plaintiff filed a Petition in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana, alleging: (1) breach of a contract for life insurance; (2) negligent misrepresentations made by New England and/or MetLife, and by an agent of New England and/or MetLife; (3) unfair trade practices under LA REV. STAT. ANN. § 51:1401; and (4) breach of duty of good faith and fair dealing. [Doc. 1-2] Defendants move this Court to grant summary judgment in their favor, as to all claims, arguing there is no genuine issue of material fact and plaintiff is left with no legally supportable claims. [Doc. 32-1]

1

A.  **Breach of Contract**[1]

All parties agree that on or about March 23, 1992, New England issued a term life policy to plaintiff, naming plaintiff as the Insured, with a face amount of $500,000.[2] The "Policy Class" is designated as "Preferred Standard." [Doc. 35-5, p.3] Additionally, the policy contained a provision, entitled "Exchange Option," with the following pertinent language:

> You can exchange this Policy, if it is not lapsed or expired, for a new policy on another plan of insurance. The exchange must be made before the policy anniversary which occurs five years prior to the Final Expiry Date. The new policy will be issued:
>
> > Without proof that the insured is insurable;
> >
> > On any plan of Whole Life or Endowment insurance, with a level face amount, issued by the Company on the Policy Date of the new policy;
> >
> > With the same Insured, Face Amount and underwriting class as this Policy.

[Doc. 36-5, p.10]

On August 30, 1996, MetLife sent an endorsement to plaintiff, which stated in pertinent part:

---

[1] Neither party has addressed what law applies to the claims herein. Nevertheless, the parties both rely upon Louisiana law for their arguments (although plaintiff has cited the Court to various, non-binding jurisprudence for certain hornbook statements of law - e.g. "'All inferences, doubts, and issues of credibility are resolved against the party moving for summary judgment.' *Nestor v. Quaker State Coca-Cola bottling Co.*, 579 F.Supp. 289, 290 (W.D. Penn, 1984.)") [Doc. 34, p.5] A party has "an obligation to call the applicability of another state's law to the court's attention in time to be properly considered." Kucel v. Walter E. Heller & Co., 813 F.2d 67, 74 (5th Cir.1987). Nevertheless, a court may determine the choice-of-law issue on its own motion where manifest justice would otherwise result. Am. Int'l Trading Corp. v. Petroleos Mexicanos, 835 F.2d 536, 540 (5th Cir.1987). Manifest injustice exists only in extreme circumstances, however, and requires more than a mere showing that the application of another state's law would produce a different result. Id. Because the parties appear to agree that Louisiana law should apply, and because there is no showing that manifest injustice would otherwise result, the Court will apply Louisiana law to the issues presented in the parties' summary judgment papers. *See e.g.* Employer's Ins. of Wausa v. Occidental Petroleum Corp., 978 F. 2d 1422, 1430 (5th Cir. 1992) (parties are bound by the theory of law they argued in the district court absent manifest injury).

[2] "The written instrument, in which a contract of insurance is set forth, is the policy." LA. REV. STAT. ANN. § 22:864.

As of the Endorsement Date, the following changes are made:

The contract or certificate to which this is attached was issued in the name of the New England Mutual Life Insurance Company ("The New England"). That company has merged with Metropolitan Life Insurance Company ("MetLife"). MetLife has assumed by operation of law all duties, liabilities and responsibilities under the contract or certificate as fully as though it had been issued in the name of MetLife instead of The New England.

[Doc. 36-5, p.16]

In April of 2006, plaintiff sought to convert the original, term life insurance policy into what both parties refer to as a "Conversion Policy," pursuant to the Exchange Option cited above.[3] [Doc. Nos. 1-2, ¶6; 32-3, p.3; 34, p.3] Plaintiff's insurance agent, George Latiolais, contacted MetLife to convert the existing policy, and in July of 2006, MetLife sent plaintiff a document entitled "A Life Insurance Policy Illustration." According to that document, plaintiff would be the named insured, the face amount of the policy would be $500,000, and plaintiff's "Risk Class" was identified as "Male Preferred Nonsmoker." [Doc. 32-7, p.2] The Illustration stated plaintiff was to make quarterly premium payments in the amount of $1,290.48. Additionally, the Illustration provided for a conversion credit of $3,365.00 to be applied to the first year premiums on the new policy. [Id. at 2, 10] On October 17, 2006, plaintiff and his agent signed the Illustration, and presumably (although not stated) returned it to MetLife. [Id. at 6; *see also* Doc. 35-2, p.5]

However, in November of 2006, MetLife sent plaintiff a new Illustration, naming plaintiff as the insured, stating the face amount would be $500,000, but changing plaintiff's "Risk Class" from "Male Preferred Nonsmoker" to "Male Standard Nonsmoker."[4] [Doc. 34-2, p.6] Due to the

---

[3] Although neither party specifically refers to the new policy sought by plaintiff as "a plan of Whole Life or Endowment insurance," defendants do not dispute that that is the type of plan plaintiff sought.

[4] The only explanation MetLife has provided for its issuance of the second Illustration is as follows: "In connection with the Term Conversion Application completed by Plaintiff on October 17,

-3-

change in plaintiff's Risk Class, the quarterly premiums were increased to $1,636.62. Additionally, the second Illustration did not contain a conversion credit. Due to the changes in the premiums and the lack of a conversion credit, plaintiff rejected the offer and filed this lawsuit.

Defendants first argue the Illustration was not an "offer," but rather was a "marketing tool" used by MetLife. [Doc. 32-2, p.4] Defendants point to p.2 of the Illustration which states as follows:

> This illustration shows values for the MetLife Investors Guarantee Advantage UL insurance policy and any illustrated riders made part of this policy on a guaranteed and a non-guaranteed basis. This illustration does not change any provisions of your policy. Actual non-guaranteed values and benefits may be more or less than those illustrated. **If you apply for this policy and the actual age, sex, or risk class, which are the basis on which the premiums are calculated, are different than shown above, your MetLife representative will provide you with a revised illustration and can explain any differences to you. This illustration was designed to help you understand how this policy works and is not a projection of how it will perform on a non-guaranteed basis.**

[Doc. 32-3, p.4 (emphasis added by defendants)][5]

---

2006, he was provided a MetLife Guarantee Advantage UL policy Illustration ("Illustration") *which mistakenly reflected a conversion credit for which Plaintiff was not eligible, and an underwriting classification of "Male Preferred Nonsmoker - Age: 59."* [Doc. 35-2, p.5 (emphasis added)]

[5]Defendants additionally point to the "Term Conversion Application," executed by plaintiff on October 17, 2006, which states in pertinent part as follows:

> I have read this application for life insurance including any amendments and supplements and to the best of my knowledge and belief, all statements are true and complete. I also agree that:
>
> ...
>
> • Only the Company's President, Secretary or Vice-President may: (a) make or change any contract of insurance; (b) make a binding promise about insurance; or (c) change or waive any term of an application, receipt, policy, or rider.
>
> ...
>
> • The Company will not be liable under this application until a new policy(ies) and/or rider is delivered and any premium due is paid.

[Doc. 32-3, p.3]

-4-

Defendants next argue the first Illustration (which was "mistakenly" sent to plaintiff) was rejected by MetLife, "because the Exchange Option of the New England Policy provides that any new policy will be issued **'with the same Insured, Face Amount and underwriting class as this Policy.'**" [Id. at pp.4-5 (emphasis added by defendants)] Defendants argue the New England underwriting class assigned to plaintiff - "Preferred Standard" - is equivalent to MetLife's risk class designated as "Male Standard Nonsmoker." Defendants state the New England "Preferred Standard" class was New England's standard risk classification,[6] and because the Exchange Option requires any new policy issued to have the same underwriting class, MetLife could not issue plaintiff a policy based on a preferred risk class. [Doc. 32-3, p.5] In other words, MetLife argues it could *only* issue plaintiff a conversion policy in the "Male Standard Nonsmoker" category.

Plaintiff, on the other hand, argues New England's classification of "Preferred Standard" was New England's lowest risk category, whereas MetLife's lowest risk category would be either "preferred best non-smoker" or "preferred non-smoker," but not "standard non-smoker." [Doc. 34, pp.3-4] Plaintiff supports the foregoing argument with the affidavit and deposition testimony of

---

[6]The only evidence defendants submit to support this assertion is an affidavit from an Assistant Vice-President for MetLife, who conclusorily states: "The 'Preferred Standard' class was New England's standard risk classification." [Doc. 32-4, ¶9] Mere assertions of legal or factual conclusions with no reference to the underlying conditions which compel those conclusions cannot alone be sufficient. Furthermore, LA. CIV. CODE ANN. art. 2047 mandates:

> The words of a contract must be given their generally prevailing meaning.
>
> Words of art and technical terms must be given their technical meaning when the contract involves a technical matter.

It seems illogical to argue the "generally prevailing" and/or "technical meaning" of the term "preferred" would be standard. The two words have different meanings. *See e.g.* the Dictionary of Insurance Terms definition of "preferred risk" (which can be accessed on the world wide web at http://www.allbusiness.com/glossaries/insurance/4941807-1.html) which defines that term as follows: "insured, or an applicant for insurance, with lower expectation of incurring a loss than the standard applicant. For example, an applicant for life insurance who does not smoke can usually obtain a reduced premium rate to reflect his or her greater life expectancy"; *see also* LA. CIV. CODE ANN. art. 2056.

George Latiolais, plaintiff's insurance agent.

Considering the burden of production associated with summary judgment motions, the legal presumptions which attach to evidence produced by a non-movant, and the prohibition against weighing evidence in this context, this Court finds that the plaintiff's evidence suffices to demonstrate the existence of a genuine issue of material fact as to whether defendants complied with their obligation (contained in the Exchange Option) to "exchange this [New England] Policy ... for a new policy on another plan of insurance ... with the same ... underwriting class as [the New England] Policy."[7] Accordingly, defendant's motion for summary judgment, as to plaintiff's breach of contract claim, is DENIED.

## B. Negligent Misrepresentation

As stated in Abbott v. Equity Group, Inc., 2 F.3d 613, 625, n.38 (5th Cir. 1993):

> Negligent misrepresentation is encompassed within the broad language of articles 2315 and 2316 of the Louisiana Civil Code. Devore v. Hobart Mfg. Co., 367 So.2d 836, 839 (La.1979). In order to recover, the plaintiff must show (1) a legal duty to supply correct information; (2) breach; and (3) damages resulting from justifiable reliance on the misrepresentation. Commercial Nat. Bank v. Audubon Meadow Part., 566 So.2d 1136, 1139 (La.App. 2d Cir.1990).

Defendants' argue "they did not make misrepresentations to Plaintiff," and to the extent plaintiff relies on the statements contained in the original Illustration, "it is inconceivable that Plaintiff, an experienced attorney, could reasonably believe that the Illustration was an offer of coverage... ." [Doc. 32-3, pp.12-13] For the same reasons identified in the section addressing plaintiff's claim for breach of contract (namely, that there are genuine issues of material fact as to

---
[7] The Court notes the term "underwriting class" is not defined in the policy. Additionally, as noted by plaintiff, "As a practical matter, Met Life could not convert the New England policy pursuant to truly identical classifications because it does not use the same terms for its risk classifications as New England." [Doc. 34, p.6] Accordingly, the fact finder will have to determine which of MetLife's risk categories is "the same" as New England's classification of "Preferred Standard."

whether or not defendants breached their obligation contained in the endorsement option), the Court finds defendants, as a matter of law and fact, have failed to carry their burden of proof, such that summary judgment is warranted in their favor.[8] Accordingly, defendant's motion for summary judgment on plaintiff's claim of negligent misrepresentation is DENIED.

## C. Unfair Trade Practices

Defendants additionally seek dismissal of plaintiff's claim brought pursuant to the Louisiana "Unfair Trade Practices and Consumer Protection Law" ("LUTPA"), LA. REV. STAT. ANN. § 51:1401, et seq. Defendants argue, "Trade practices of insurers are not regulated by the Unfair Trade & Consumer Protection Law," citing in support LA. REV. STAT. ANN. § 51:1406. Section 1406 states as follows: "The provisions of this Chapter shall not apply to: (1) ... actions or transactions subject to the jurisdiction of ... the insurance commissioner...." Defendants further argue trade practices of insurers are regulated by LA. REV. STAT. ANN. § 22:1213 (recently redesignated as LA. REV. STAT. ANN. § 22:1963), which states as follows: "No person shall engage in this state in any trade practice which is defined in this Part to be an unfair method of competition or an unfair or deceptive act or practice in the conduct of the business of insurance, including unauthorized insurance as provided in R.S. 22:1902 et seq." As noted by defendants, many courts have held § 1213 does not provide for a private cause of action, as the power to assert such claims is vested exclusively with the Commissioner of Insurance. *See e.g.* Clausen v. Fidelity & Deposit Co. of Maryland, 660 So.2d 83 (La. 1st Cir. 1995); Klein v. American Life & Casualty Co., 858 So.2d 527 (La. 1st Cir. 2003); and

---

[8]As to the other two elements of plaintiff's *prima facie* claim for negligent misrepresentation, the Court has simply not been provided with sufficient information, such that it could or should dispose of this claim by way of summary judgment.

-7-

Letter v. Umumprovident Corp., 2003 WL 22077803.[9] As plaintiff has not responded to this portion of defendants' motion for summary judgment, and the motion appears to be well-grounded in both law and fact, plaintiff's claim asserted under the LUTPA is DENIED.

## D. Breach of Duty of Good Faith and Fair Dealing

LA. REV. STAT. ANN. § 22:1220 states, in pertinent part:

(A) An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

(B) Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

> (1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue. ...

"[T]he bases for an insured's cause of action for a breach of the implied covenant of good faith and fair dealing are not limited to the prohibited acts listed in La. R.S. 22:1220(B)." Theriot v. Midland Risk Ins. Co., 694 So.2d 184, 188 (La. 1997).

---

[9]The Court notes in Lamarque v. Massachusetts Indemnity & Life, 794 F.2d 197 (5th Cir.1986), the Fifth Circuit concluded that the Louisiana Supreme Court would allow a private cause of action under LUTPA against an insurance company. Nonetheless, the majority of state and federal courts deciding the same issue since the Lamarque opinion, have declined to apply LUTPA in the insurance context. *See* Alarcon v. Aetna Casualty and Surety Company, 538 So.2d 696 (La.App. 3rd Cir.1989) (no private cause of action against insurance companies under LUTPA); Comeaux v. Pennsylvania General Insurance Company, 490 So.2d 1191, 1193 (La.App. 3rd Cir.1986) (same); West v. Fireman's Fund Insurance Company, 683 F.Supp. 156 (M.D.La.1988) (explicitly recognizing the Fifth Circuit opinion in Lamarque and rejecting it, due to the Fifth Circuit's failure to address La. R.S. 22:1211 et seq. and its failure to follow Louisiana jurisprudence); Travelers Indemnity Company v. Powell Ins. Co.,1996 WL 578030 (E.D.La.)(Finding no private right of action under LUTPA, and noting, "While the United States Fifth Circuit has held, in a pithy and conclusory opinion, that in its best estimation the Louisiana Supreme Court would decide that private causes of action against insurance companies are allowed under the LUTPA, *see* Lamarque ..., the majority of courts to have considered the issue have ruled otherwise."); LeMarie v. Lone Star Life Ins. Co., 2000 WL 73927 (E.D.La.)(same). As plaintiff has not addressed this claim, the Court presumes he does not contest defendants' assertion that there exists no private cause of action under LUTPA.

Defendants assert the elements of a claim under Section 22:1220 are as follows:

(1) the plaintiff must have a valid claim **under an insurance policy**, which is not a health or accident policy.

(2) the insurer must have *knowingly* engaged in one of the five acts enumerated under Section 22:1220B.[10]

(3) the plaintiff must have sustained actual damages resulting from the breach.

[Doc. 32-3, p.14 (citations omitted)][11] Defendants argue plaintiff cannot meet his *prima facie* burden, arguing, "In this case, there was no policy issued by MetLife on the life of Preis; Preis was not an insured under a MetLife policy, and La. RS 22:1220 is inapplicable to Plaintiff's claims." [Id. at 15]

The Court is unpersuaded by defendants' argument. As earlier noted, on August 30, 1996, MetLife sent an endorsement to plaintiff, which stated in pertinent part:

> As of the Endorsement Date, the following changes are made:
>
> The contract or certificate to which this is attached was issued in the name of the New England Mutual Life Insurance Company ("The New England"). That company has merged with Metropolitan Life Insurance Company ("MetLife"). **MetLife has *assumed* by operation of law all duties, liabilities and responsibilities under the contract or certificate as fully as though it had been issued in the name of MetLife instead of The New England.**

[Doc. 36-5, p.16 (emphasis added)] The foregoing contractual provision appears to be an assumption by MetLife of the obligation (*i.e.* the contract for life insurance) of New England. *See* LA. CIV. CODE art. 1821 ("An obligor and a third person may agree to an assumption by the latter of an obligation of the former.") Because MetLife assumed New England's obligation to plaintiff, there is a contract of insurance between plaintiff and MetLife, which is explicitly acknowledged by

---

[10]The Court notes Section 1220B sets forth six acts which constitute a breach of the insurer's duty of good faith and fair dealing.

[11]The Court makes no finding as to whether or not defendants' assertion of the elements of a claim under § 1220 is or is not correct.

MetLife in the Endorsement quoted above. Whether MetLife has sufficiently performed the obligation it assumed (*i.e.* whether the conversion policy offered by MetLife constitutes performance of its obligation under the "Exchange Option") is, as previously noted, a genuine issue of material fact. Accordingly, defendants' motion for summary judgment as to plaintiff's claim of breach of duty of good faith and fair dealing is DENIED.

## II. Motion to Strike

Defendants have filed a motion to strike the affidavit (attached to plaintiff's opposition to defendants' motion for summary judgment) of George Latiolais, plaintiff's insurance agent, asserting the affidavit violates that portion of FED. R. CIV. P. 56(e) which states, "A supporting or opposing affidavit must be made on personal knowledge... ." Defendants argue in the affidavit, Mr. Latiolais offers impermissible opinion testimony, testimony not made on personal knowledge, and attempts to testify as an expert witness. The only portion of the affidavit about which defendants specifically complain is the last paragraph, which concludes as follows:

> Given my conversations with the Dallas Met Life office, it was my impression Met Life would honor the full terms of the original illustration. It is common in the industry that, when a policy is converted in this situation, the original underwriting is honored. This should be especially true here, where policy conversion did not require a medical exam prior to assigning Edwin's risk category. In these cases, the underwriting classification is carried over into the converted policy. In this instance, the original term policy issued by New England was based on the insurer's lowest possible risk category, "preferred." The insure's current lowest possible risk category would be either "preferred best non-smoker." The first illustration presented by Met Life for the conversion policy was based on a "preferred non-smoker" risk category. The second illustration presented by Met Life for the conversion policy (and the type policy that Met Life later decided was the only one it was willing to issue) was based on a "standard non-smoker" risk category, which is not the insurer's lowest possible risk category. Under the circumstances, based on my experience in the life insurance industry, it surprised me that Met Life would not honor the original illustration that was presented. When the company's insurance agency prepares the conversion illustration, I count on it to accurately represent what is available.

-10-

[Doc. 34, Ex. A, ¶11] Defendants' specific complaints, with regard to the foregoing paragraph, are as follows: "Mr. Latiolais is an insurance broker. He is not an employee of MetLife and he is not an underwriter for MetLife; therefore, any testimony regarding MetLife's underwriting classifications is not made on personal knowledge." [Doc. 36, p.4] Defendants conclude, "To the extent that the statements in paragraph 11 of Latiolais' affidavit are offered as expert witness testimony, they should be stricken." [Id. at 5]

The Court disagrees. F.R.C.P. 56(e) provides, in pertinent part: "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." A non-expert witness may testify to opinions or inferences that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge." FED.R.EVID. 701.[12] Earlier in his affidavit, Mr. Latiolais testifies as follows:

> 2.
> I have personal knowledge of the facts stated in this Affidavit and all facts stated in this Affidavit are true and correct.
>
> 3.
> I am the owner of Latiolais & Associates. I am an authorized broker of Met Life, Inc., and its subsidiaries, New England Life and Metropolitan. I have worked in the capacity of an insurance broker and have counseled Edwin G. Preis relative to the purchase of insurance policies on his life for 15 years. I personally sold the New England term life policy no. 8707283, the policy at issue herein, to Edwin G. Preis,

---

[12]By contrast, FED.R.EVID. 702 ("Testimony by Experts") provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

-11-

on or about March 23, 1992. I also personally arranged for the conversion of this
policy on or about October 17, 2006, the incident at issue to this lawsuit. I continue
to counsel Edwin G. Preis on insurance matters. As such, I have personal knowledge
to the events described herein.

Paragraphs 7 through 10 describe Mr. Latiolais' efforts to procure the coverage plaintiff claims he is entitled to from MetLife.

The Court finds Mr. Latiolais has personal knowledge of the insurance industry, his testimony is helpful to a clear understanding of the facts and issues presented in this case, and his testimony does not involve scientific, technical or other specialized knowledge. Moreover, "[R]ule 701 does not preclude testimony by business owners or officers on matters that relate to their business affairs. Indeed, an officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert." Texas A&M Research Foundation v. Magna Transp., Inc., 388 F.3d 394, 403 (5th Cir. 2003). The Court finds Mr. Latiolais' testimony is based on particularized knowledge gained in his position as owner of (and as a broker for) Latiolais & Associates. See id. ("McPherson's testimony, similarly, is based on particularized knowledge based on his position as vice-president of the research foundation.") Accordingly, the motion to strike is DENIED.

### III. Motion for Leave

Defendants have additionally filed a "Motion for Leave of Court to File Reply to Plaintiff's Supplemental Opposition to Motion for Summary Judgment." [Doc. 40] (Plaintiff was previously granted leave to supplement his opposition to summary judgment with the deposition testimony of George Latiolais.) Defendants' motion for leave is hereby GRANTED.

The only specific arguments defendants make with regard to issues raised by plaintiff's supplemental opposition are as follows:

Defendants object to the introduction of the complete transcript of Latiolais' deposition for the same reason that they moved to strike Latiolais' affidavit - parts of the testimony may not be relevant to the Motion for Summary Judgment, and would not be admissible at trial. Further, Defendants submit that, like certain statements made in the affidavit, Latiolais' deposition testimony must be stricken to the extent that it is offered as expert witness testimony.

[Doc. 40-2, pp.1-2][13] Defendants' objection is OVERRULED for the same reasons provided for denying defendants' motion to strike.[14]

## IV. Conclusion

Due to the foregoing, the Motion for Summary Judgment [Doc. 32] is GRANTED IN PART and DENIED IN PART. The motion is granted as to plaintiff's claim for unfair trade practices; it is denied as to plaintiff's claims for breach of contract, negligent misrepresentation, and breach of duty of good faith and fair dealing. The Motion to Strike [Doc. 36] is DENIED. The motion for leave [Doc. 40] is GRANTED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___28___ day of May, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[13] The remainder of defendants' brief is devoted to repeating arguments made previously in their original motion and original reply. In the future, leave will be denied where a party repeats arguments already before the Court.

[14] The Court additionally notes it has not relied upon Mr. Latiolais' deposition testimony for any portion of this Ruling.